UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT BUTLER and STEPHEN HARDY,

    Plaintiffs,

v.                                Case No.:  2:24-cv-807-SPC-NPM

TZ INSURANCE SOLUTIONS, LLC,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Defendant's Motion to Partially Dismiss the Amended Complaint (Doc. 19). Plaintiffs Robert Butler and Stephen Hardy filed a Response in opposition (Doc. 21) to which Defendant replied (Doc. 24). The Motion is now ripe for review.

Plaintiffs bring this age discrimination action under the Age Discrimination in Employment Act (ADEA) and the Florida Civil Rights Act (FCRA)(Doc. 3).[1] Hardy began working for Defendant in 2011, Butler in 2015. Both initially worked in sales and, for the first several years of their employment, experienced no issues. This purportedly changed in 2017 when

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiffs. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

Mike Fulkerson became the site director for Defendant's Fort Myers branch, where both Plaintiffs worked. Over the next couple years, Plaintiffs noticed their inbounding sales leads began to decrease, eventually stopping altogether. According to Plaintiffs, Fulkerson was manipulating the leads distribution such that leads ordinary provided to Plaintiffs were instead given to younger sales employees. Because of this decrease in leads, Plaintiffs' sales production plummeted and, consequently, in 2019, they were placed on a performance plan. What's more, in 2017, Hardy interviewed for a Team Lead position (a position he claims he was qualified for) but was passed over for a younger, less experienced employee. Fulkerson, of course, was behind this decision.

With Fulkerson calling the shots, Plaintiffs felt their days were numbered. Feeling enough was enough, Butler reported Fulkerson's purported discriminatory practices to human resources. Immediately after that, Butler noticed an increase in his leads distribution. And a short while later, Fulkerson was transferred to another position in North Carolina where he no longer maintained authority over Plaintiffs. For the next several years, Plaintiffs experienced minimal issues. Then Fulkerson returned.

In April 2022, Fulkerson was promoted to a Regional Director position based in Tampa. He oversaw the Fort Myers office and was thus back in Plaintiffs' chain of command. Plaintiffs allege that things quickly went south. Within a month, Fulkerson purportedly spawned false allegations against

Butler and directed Adam Darlin, Butler's supervisor, to reprimand Butler through a "write-up."  Butler refused to sign this write-up, explaining to Darlin that Fulkerson was merely retaliating for his complaint to human resources in 2019.  On October 16, 2022, Butler was allegedly coerced into signing a written performance reprimand for sales calls he made a month prior.  He believes this rationale was erroneous.  A few weeks later, on November 3, 2022, Butler was terminated for submitting false applications.[2]  He believes it was Fulkerson who orchestrated his termination through his managerial position.  (Doc. 17).

As for Hardy, upon Fulkerson's return, he noticed his incoming leads began to diminish again, and he was written up for his weak sales numbers. On June 28, 2022, Hardy asked Fulkerson for an interoffice transfer from sales to a case-management position to escape Fulkerson's oversight.  Without any consideration, Fulkerson denied the request.  Not giving up, Hardy approached his Head of Sales, Mike Wolkonowski, and requested the same.  Wolkonowski granted the transfer.  Six weeks later, on August 8, 2022, Hardy was terminated based on a complaint from months earlier.  In Hardy's view, Fulkerson orchestrated his termination by seeking out this months-old complaint, which was not even a terminable event.  And he claims that younger employees had received similar complaints but were not terminated.

---

[2] At some unknown point, Butler's position changed from sales to a Licensed Agent.  He held this position when he was terminated.

On March 3, 2023, Butler filed a discrimination charge with the EEOC. In it, he alleges that Defendant discriminated against him due to his age and that his termination was retaliation for blowing the whistle on Fulkerson's discriminatory conduct. (Doc. 9-1). The charge also states that "[h]undreds if not thousands have been fired in this same manner, but few have put in a Retaliation complaint" and that Fulkerson "had a pattern of firing proven older agents and hiring and promoting young people who just started." (Doc. 9-1 at 7). On May 2, 2024, the EEOC issued Butler a Notice of Right to Sue. (Doc. 9-2). Hardy, however, never filed an EEOC charge.

Plaintiffs each bring a claim for age discrimination under the ADEA and the FCRA (counts I and II), and Butler brings a Retaliation claim (count III). (Doc. 17). Defendant argues that Hardy's claim (count I) must be dismissed because he never filed a discrimination charge with the EEOC and thus failed to exhaust administrative remedies. It further argues both discrimination claims should be dismissed to the extent that they are based on conduct that predates the EEOC charge by 300 and 365 days. And it moves to dismiss Butler's retaliation claim because he cannot establish a causal connection between his protected activity and the adverse-employment action. (Doc. 19).

To survive a Fed. R. Civ. P. 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels

4

and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

Defendant first argues that Hardy's discrimination claim must be dismissed because he failed to exhaust administrative remedies. As a condition precedent to filing suit, the ADEA requires that the plaintiff exhaust administrative remedies by filing a timely charge of unlawful discrimination with the EEOC. *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1291 (11th Cir. 2002). There is no dispute that Hardy neglected to do so. To avoid this shortcoming, Hardy relies on the "single-filing rule." Under this rule, a non-filing plaintiff may "piggyback" on another plaintiff's EEOC charge if: (1) the relied upon charge is not invalid, and (2) the claims arise out of similar discriminatory treatment in the same time frame. *Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 450 (11th Cir. 1993); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1102 (11th Cir. 1996) (extending the single-filing rule to ADEA

5

cases).[3] If these factors are met, Hardy's case may proceed despite his failure to file an EEOC charge.

Hardy's reliance on the single-filing rule spares his case. There is no argument that Butler's charge is invalid or that Hardy's claims do not arise from the same time frame as Butler's. So, the focus is on whether Hardy's claim relates to the same discriminatory treatment as Butler's claim in his EEOC charge. It does. Plaintiffs both allege they had no issues in their employment until Fulkerson entered their chain of command and, like a marionettist pulling the strings, orchestrated their termination to make way for younger employees by concocting false narratives about them. Allegations that the same individual conducted the same general discriminatory practices is similar enough to satisfy the single-filing rule. *See E.E.O.C. v. J & R Baker Farms, LLC*, No. 7:14-CV-136 HL, 2015 WL 4527044, at *3 (M.D. Ga. July 27, 2015) (finding the single-filing rule applies when the claims were "substantively identical").

Moreover, Butler's EEOC charge explained that hundreds of other employees may be victim to similar discriminatory practices and that Fulkerson "had a pattern of firing proven older agents and hiring and

---

[3] The Eleventh Circuit generally applies the legal standards developed in Title VII and ADEA cases interchangeably, including the procedural requirements. *See Rizo v. Alabama Dep't of Hum. Res.*, 228 F. App'x 832, 835 (11th Cir. 2007). The Court does so throughout this Order.

promoting young people who just started." (Doc. 9-1). This put Defendant (and the EEOC) on notice that there may be others who would bring suit based on Fulkerson's discriminatory practices. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1225 (11th Cir. 2001). ("[T]he charge-filing requirement is designed to put the EEOC and the employer on notice of the allegations."); *contra Williams v. Cadence Bank NA*, No. 5:16-CV-266-MCR-GRJ, 2017 WL 10844958, at *2 (N.D. Fla. Feb. 28, 2017) (rejecting the single-filing rule because the relied-upon EEOC charge "did not give the employer notice of the possibility of other similar discriminatory treatment claims" and failed to suggest "a policy or pattern and practice that would have caused the EEOC investigation to include other employees in its scope"). Thus, Hardy's case may proceed under the single-filing rule.[4]

In protest, Defendant argues the alleged discriminatory treatment was not similar because Plaintiffs held different job titles and experienced different conduct. But Hardy's claims need not be factually identical to Butler's, and other courts have rejected similar arguments. *Cf. E.E.O.C. v. California Psychiatric Transitions, Inc.*, 644 F. Supp. 2d 1249, 1266 (E.D. Cal. 2009) (rejecting the defendant's argument that claims were not similar even though

---

[4] Defendant argues that "[n]o court has held that the single filing rule applies to un-exhausted FCRA claims," so Hardy's FCRA discrimination claim must be dismissed. The Court disagrees. *See Garrett v. Dep't of Corr.*, 589 F. Supp. 2d 1289, 1300 (M.D. Fla. 2007) (applying the single-filing rule to FCRA violations).

plaintiffs held different job titles, worked different shifts, and had different supervisors because the claims "arose out of similar alleged sexual harassing treatment by the same individual"). So the Court is unconvinced.

Defendant next argues that Plaintiffs' discrimination claims (counts I and II) must be dismissed *in part* because the claims are partially based on untimely events. As discussed above, a plaintiff must file a charge of discrimination with the EEOC before suing. In a deferral state, such as Florida, the charge for an ADEA claim must be filed within 300 days of the last alleged discriminatory act. 42 U.S.C. § 2000e–5(e)(1); *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). "[O]nly those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). Because Butler filed the EEOC charge on March 3, 2023, discriminatory acts occurring before May 7, 2022, are outside the scope of this action.[5]

Butler alleges he was terminated on November 3, 2022, and Hardy was allegedly terminated on August 8, 2022. This conduct falls within 300 days of Butler's EEOC charge, so Plaintiffs state a claim for discrimination under the ADEA (and FCRA). That said, Plaintiffs also allege various discriminatory

---

[5] For FCRA claims, the charge must be filed within 365 days of the alleged FCRA violation. *Rainey v. United Parcel Serv., Inc.*, 816 F. App'x 397, 401 (11th Cir. 2020). So discriminatory acts occurring prior to March 3, 2022, are outside the scope of Plaintiffs' claims under the FCRA.

actions that occurred beyond the limitation period. The Court agrees with Defendant that such conduct is not actionable.[6] But the pre-limitation conduct may be otherwise admissible as background evidence. *See Corder v. City of Bessemer*, No. 2:14-CV-02133-RDP, 2015 WL 1778411, at *5 (N.D. Ala. Apr. 20, 2015). So Defendant's request to dismiss counts I and II is denied.

Finally, Defendant moves to dismiss Butler's retaliation claim (count III). To state a retaliation claim under the ADEA, the plaintiff must allege that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).[7] Butler appears to allege two instances of protected activity: (1) his June 2019 complaint to Defendant's human resources department, and (2) his May 2022 complaint to Darlin that the written reprimand was Fulkerson's attempt to retaliate for the June 2019 complaint. As for the adverse employment action, he seemingly relies on the May 2022 write-up and his November 3, 2022 termination. Defendant contends Butler cannot establish the third element—a causal connection.

---

[6] Plaintiffs invoke the "continuing violation theory" to salvage the untimely conduct. But this theory only applies in hostile work environment claims. *See Abram v. Fulton Cnty. Gov't*, 598 F. App'x 672, 676 (11th Cir. 2015). Plaintiffs have not brought such a claim.

[7] The elements are the same for a retaliation claim under the FCRA. *See Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006).

9

Before reaching Defendant's causation argument, the Court must address the alleged adverse-employment actions. Although unclear, Butler appears to cite the May 2022 write-up as an adverse action. If so, this attempt fails. Butler does not allege that this write-up impacted any condition of his employment, such as salary, benefits, title, or job duties. So it is not an "adverse employment action" under the statutes. *See Summerlin v. M&H Valve Co.*, 167 F. App'x 93, 96 (11th Cir. 2006) ("The reprimand of an employee does not constitute an adverse employment action when the employee suffers no tangible harm as a result."); *Lucas v. City of Delray Beach*, 692 F. Supp. 3d 1271, 1288–89 (S.D. Fla. 2023) ("The Eleventh Circuit has been clear that a written reprimand (standing alone) doesn't constitute an adverse employment action."). Without the written reprimand, Butler's retaliation claim hinges on his termination.

Turning now to causation. There are several ways of establishing causation. One way is showing close temporal proximity between the protected activity and the adverse employment action. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). But "[i]f there is a delay of more than three months between the two events, then the temporal proximity is not close enough, and the plaintiff must offer some other evidence tending to show causation." *Henderson v. FedEx Express*, 442 F. App'x 502, 506 (11th Cir. 2011)*; see also Thomas*, 506 F.3d at 1364 ("A three to four-month disparity

between the statutorily protected expression and the adverse employment action is not enough."). When Butler was terminated on November 3, 2022, over three years had passed from his June 2019 complaint, and roughly six months passed since his May 2022 complaint. So the Court agrees with Defendant that Butler cannot show causation based on temporal proximity.

Even so, Butler still has other options. For instance, he can show "a pattern of antagonism" or "that the adverse action was the first opportunity for the employer to retaliate." *Ward v. United Parcel Serv.*, 580 F. App'x 735, 739 (11th Cir. 2014). He attempts the latter, alleging that "[a]ny delay in the adverse action against [Butler], i.e., his termination, is explained by the fact that Fulkerson took action against [Butler] at his first opportunity." (Doc. 17 ¶ 56). This is because once Butler first reported Fulkerson's discriminatory practices in June 2019, Fulkerson was transferred to North Carolina, unable to retaliate until he returned three years later. In short, Butler believes that November 3, 2023, was Fulkerson's first opportunity to have him terminated.

Defendant balks at this allegation. It observes that Butler was terminated over six months after Fulkerson returned and six months after his last protected activity. In Defendant's view, this six-month window belies any assertion that Butler's termination was Fulkerson's first opportunity to retaliate. This point is well taken. But this issue must be sorted out during

11

discovery and then on summary judgment. For now, Butler has plausibly stated a retaliation claim.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Partially Dismiss the Amended Complaint (Doc. 19) is **DENIED.**

**DONE** and **ORDERED** in Fort Myers, Florida on November 19, 2024.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record